OPINION
{¶ 1} Defendant-appellant Robert Kreischer appeals the denial of his Petition for Post-Conviction Relief by the Perry County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 22, 2000, the Perry County Grand Jury indicted appellant on one count of felonious assault in violation of R.C.2903.11(A)(1), a felony of the second degree. At his arraignment, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a jury trial commenced on January 22, 2001. The following evidence was adduced at the jury trial.
 {¶ 3} On May 28, 2000, appellant and Terry Wooten, the victim herein, owned adjacent properties located in Perry County, Ohio, which are accessible via a gravel access road. At trial, Wooten testified that, prior to May 28, 2001, he had problems with appellant with respect to the use of the access road "[f]rom time to time." (T. at 32).
 {¶ 4} On May 28, 2000, Wooten and a friend, Brian Batross, were coming down the access road when they discovered that the road was blocked by two pickup trucks and a three wheeler. As Wooten was exiting his vehicle, he honked his horn. Appellant then approached with another man and told Wooten that he wanted to speak to him. Since appellant, who had a beer in his hand, appeared to be "a little intoxicated," Wooten took his eyeglasses off "just in case I got smacked." (T. at 35).
 {¶ 5} Wooten testified that after appellant told him that "I want to kick your ass", he responded by stating "Okay. You've told me this for five years you've wanted to kick my ass. I'm in front of you. Kick my ass." (T. at 35). As Wooten walked behind his truck, appellant followed him. According to Wooten, appellant, who was behind him, "grabbed me and swung me around, got me in the eye" with his fist. (T. at 36). When Wooten fell to the ground, appellant kicked him five or six times in the head, neck and back. Wooten's account of what took place was corroborated by Brian Batross.
 {¶ 6} Immediately after the assault, Wooten and Batross went to the Perry County Sheriff's Department where Wooten gave a statement to Deputy Ed Miller. According to Deputy Miller, appellant had abrasions and marks on his face, including injuries around both of his eyes and his right ear. Deputy Miller further testified that while Wooten's right eye was slightly discolored and "had some swelling to it", his left eye "was extremely swollen, and as time went on, as I was speaking with him and doing my interview with him, . . . his eye began to close from the swelling." (T. at 92-93). Deputy Miller also noticed that the back of Wooten's hands "were kind of red". (T. at 105).
 {¶ 7} Appellant testified at trial in his own behalf. Appellant testified that, after he told Wooten that all of the trucks blocking the access road could not be moved immediately since the owners of one of them were fishing at a nearby pond, Wooten "just freaked out". (T. at 171). The following is an excerpt from appellant's testimony at trial:
 {¶ 8} ". . . I started walking back up the hill, and he's yelling at my kid, "Move those F-ing trucks. Get all those F-ing trucks." My son's like, "I can't even drive." He says, "You get somebody down here to move those F-ing trucks," and I go — that's when I just walked up.
 {¶ 9} "I says, "Wooten, what's your problem?" He says, "You get those F-ing trucks out of the road," and I told little Bob [appellant's son], I said "Get that four-wheeler out of the way." And he says — he says, "This is just as much my road as it is yours," and he started going off on me. I said, "You're either going to go through or sit there for a while," because I knew the people that owned the truck were down fishing at the pond.
 {¶ 10} "I told little Bob, I said, "Come on, little Bob," and we started walking back down to where they were working, and he just freaked out.
 {¶ 11} "Q. Who's he?
 {¶ 12} "A. Wooten. I heard the door slam on his truck, and I looked back, and he's ripping off his glasses and throws his glasses inside, rips his hat off, throws it on the ground, and comes running over to me and shoves me down the driveway. And I'm like, "What's your problem?"
 {¶ 13} "He says, "You think you're tough. You think you're so bad," keeps on poking me, "You think you're bad. Come on, take a swing at me." I said, "I ain't going to take a swing at you. I've got my kid here." He said, "you wanted to fight me all these times," and he's got mental problems, there's no doubt about it, this guy. . . ."(T. at 171-172).
 {¶ 14} According to appellant, at appellant's urging, the two then proceeded to walk away from Wooten's truck. Appellant testified that as the two approached Wooten's property line, Wooten started pushing him. When Wooten went to push appellant again, appellant "smacked him right in the eye. And he went flying back into the woods — into the bushes". (T. at 173). Appellant, when asked, denied that he had ever kicked Wooten. Appellant and his friends, Gary Wojcik and James Ponsart, all testified at trial that appellant had only punched Wooten one time and that appellant had never kicked Wooten.
 {¶ 15} As a result of the assault, Wooten suffered profound hearing loss in his left ear and, according to audiologist Jennifer Brown, a "mild, high-frequency sensory neural hearing loss" in this right ear. (T. at 108). In addition, Wooten's left facial bone was broken and permanently pushed in and Wooten suffered permanent vision loss.
 {¶ 16} At the conclusion of the evidence and the end of deliberations, the jury, on January 22, 2001, returned with a verdict finding appellant guilty of felonious assault in violation of R.C.2903.11(A)(1). Thereafter, as memorialized in a Judgment Entry filed on March 12, 2001, appellant was sentenced to two years in prison and ordered to make restitution to Wooten in the amount of $9,163.16.
 {¶ 17} Appellant filed a direct appeal of his conviction and sentence wherein this Court found the basis for appellant's claim of ineffective assistance of counsel was not properly before this Court because such was not found in the record and that Postconviction relief, rather than a direct appeal, was a means by which the Appellant could bring claims of constitutional violations based upon matters outside the record. This Court did, however, find that the amount of the restitution was not supported by competent, credible evidence.
 {¶ 18} Subsequently, on November 14, 2001, Appellant filed a Petition for Post Conviction Relief with the trial court styled as a Petition to Vacate or Set aside Judgment of Conviction or Sentence.
 {¶ 19} On November 27, 2001, the trial court denied Appellant's Petition for Post Conviction Relief without making Findings of Fact and Conclusions of Law.
 {¶ 20} Appellant filed a Notice of Appeal from such denial assigning error solely to the trial court's denial to issue Findings of Fact and Conclusions of Law.
 {¶ 21} Upon the filing of briefs by each side, Appellant filed a Mandamus action with this Court to compel the trial court to enter Findings of Fact and Conclusions of Law.
 {¶ 22} On April 17, 2002, the trial court issued Findings of Fact and Conclusions of Law, again denying the Petition without a hearing.
 {¶ 23} Appellant filed an amended Notice of Appeal from such decision.
 {¶ 24} It is from denial of this Petition that appellant now prosecutes his appeal, raising the following assignments of error:
ASSIGNMENTS OF ERROR
 I.
 {¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DISMISSING HIS CLAIM THAT HE WAS DENIED CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW BY THE FAILURE OF THE PROSECUTOR TO DISCLOSE EXCULPATORY EVIDENCE MATERIAL TO HIS DEFENSE."
 II.
 {¶ 26} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DISMISSING HIS CLAIM THAT HE WAS DENIED CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBTAIN DISCOVERABLE WITNESS STATEMENTS WHICH WERE MATERIAL TO HIS DEFENSE."
 III.
 {¶ 27} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN SUMMARILY DISMISSING HIS PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING."
 I. {¶ 28} Appellant, in his first assignment of error, maintains that the trial court erred in dismissing his claim that he was denied the right to a fair trial by appellee's failure to disclose Wooten's signed, written statement to the Sheriff's Department and Deputy Miller's typewritten notes summarizing Wooten's oral statements to him. We disagree.
 {¶ 29} Appellant, in the case sub judice, had, on September 13, 2000, filed a written supplemental request for discovery pursuant to Crim.R. 16 requesting, in part, "[a]ny and all evidence favorable to the Defendant or applicable to his defense in this case".
 {¶ 30} In Brady v. Maryland (1963), 373 U.S. 83, 87, it was established that the prosecution's failure to disclose evidence favorable to the accused upon request constitutes a violation of the Fourteenth Amendment's due process guarantee of a fair trial when "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id.; see, also, State v. Johnston
(1988), 39 Ohio St.3d 48. This opinion was incorporated into Ohio's Crim.R. 16(B)(1)(f), which provides "[u]pon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material to guilt or punishment."
 {¶ 31} Brady, supra, requires the disclosure only of "material" evidence, and evidence is "material" only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v.Bagley (1985), 473 U.S. 667.
 {¶ 32} "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v. Agurs (1976), 427 U.S. 97,110-111.
 {¶ 33} In the present case, the trial court found that the possibility of cross-examination concerning the victim's prior statement would not have led to different result and may in fact have helped the State's case by giving more credence to their account of the assault.
 {¶ 34} Upon review, we do not find that the trial court abused its discretion in so finding that the undisclosed evidence was not material.Brady, supra.
 {¶ 35} Appellant's first assignment of error is, therefore, overruled.
 II. {¶ 36} Appellant, in his second assignment of error, contends that the trial court erred in dismissing his claim that he was denied the effective assistance of trial counsel. We disagree.
 {¶ 37} Appellant specifically argues that his trial counsel was deficient in failing to obtain, pursuant to Crim.R. 16(B)(1)(g)[1], Wooten's May 28, 2000, written statement to the Perry County Sheriff and Deputy Miller's signed, typewritten notes recording Wooten's statements to him for the purposes of impeaching Wooten. According to appellant, since there were conflicting accounts of the assault, the same were necessary to impeach Wooten's credibility "as to whether unreasonable force was utilized by Appellant in exercise of the right to self-defense."[2] Appellee, in its brief, concedes that "defense counsel did not request these documents at trial."
 {¶ 38} In State v. Jackson (1980), 64 Ohio St.2d 107, syllabus, the Supreme Court of Ohio held the following:
 {¶ 39} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness"
 {¶ 40} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364;Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142.
 {¶ 41} The trial court found that trial counsel was ineffective in failing to obtain a signed, written statement given by Wooten to the Perry County Sheriff on May 28, 2000, and the signed, typewritten notes of Deputy Ed Miller recording Wooten's statements for purposes of impeaching Wooten. According to appellant, Wooten, in such statement, indicated that while he was on the ground, appellant "kick[ed] my ribs a few times". While such statement and Deputy Miller's notes were not procured by appellant prior to trial, during the period between the trial and the sentencing hearing appellant's new counsel obtained a copy of the same via a Public Records request. Subsequently, at the sentencing hearing in this matter, appellant moved to supplement the record with Wooten's written statement and Deputy Miller's notes "as a matter of housekeeping". (T. of Sentencing hearing at 8). After appellee authenticated the same as records of the Perry County Sheriff in relation to the case, the trial court granted appellant's motion to supplement and then sentenced appellant. Appellant now specifically argues that the material inconsistencies between Wooten's oral and written statements and his trial testimony with respect to whether he was repeatedly kicked in the head "would have been fertile ground for cross-examination by Appellant's trial counsel."
 {¶ 42} As stated previously, the trial court found that the possibility of cross-examination concerning the victim's prior statement would not have led to different result and may in fact have helped the State's case by giving more credence to their account of the assault.
 {¶ 43} Appellant therefore fails to meet the second prong of theStrickland test.
 {¶ 44} Appellant's second assignment of error is, therefore, overruled.
 III. {¶ 45} Appellant, in his third assignment of error, argues that the trial court erred in denying his Petition without a hearing. We disagree.
 {¶ 46} In reviewing whether the trial court erred in denying a petition for post-conviction relief, without an evidentiary hearing, we apply an abuse of discretion standard. State v. Watson (Feb. 17, 1998), Butler App. No. CA97-07-145, unreported, appeal dismissed (1998),82 Ohio St.3d 1413, citing State v. Chafin (March 25, 1999), Franklin App. No. 98AP-865, unreported, at 2. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An evidentiary hearing is not automatically required for every petition for post-conviction relief. State v. McGuire (April 20, 1998), Preble App. No. CA97-06-015, unreported, appeal dismissed (1998), 83 Ohio St.3d 1428. The Ohio Supreme Court recently stated that:
 {¶ 47} "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for post-conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief. State v. Calhoun
(1999), 86 Ohio St.3d 279, paragraph two of the syllabus."
 {¶ 48} "Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing. See Rivera v. United States (C.A.9, 1963), 318 F.2d 606."
 {¶ 49} Based on our rulings as to Assignments of Error I and II, we find that the trial court did not err in finding that Appellant failed to set forth sufficient operative facts to establish substantive grounds for relief and summarily denying Appellant's Petition without a hearing.
 {¶ 50} Appellant's third and final assignment of error is overruled.
 {¶ 51} Accordingly, the judgment of the Perry County Court of Common Pleas is affirmed.
By Boggins, J., Gwin, P.J. and Edwards, J. concur.
Topic: Post-Conviction Relief
[1] Crim.R. 16 states, in relevant part, as follows:
(B) Disclosure of evidence by the prosecuting attorney
 (1) Information subject to disclosure. (a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney: . . .
 (g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon . . .
[2] The trial court instructed the jury on the law of self defense.